UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SARA S.,

               Plaintiff,

   v.

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.

CASE NO. C17-5967-BAT

**ORDER AFFIRMING THE COMMISSIONER AND DISMISSING THE CASE**

Plaintiff Sara S. seeks review of the denial of her application for Disability Insurance Benefits. She contends the ALJ erred in evaluating the medical evidence, her testimony, and the lay witness evidence, and in assessing her residual functional capacity. Dkt. 12. The Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** the case with prejudice.

## BACKGROUND

Plaintiff is currently 38 years old, has a high school education, and has worked as a sales clerk, department manager, and retail store manager. Tr. 49, 84, 232. In August 2013, she applied for benefits, alleging disability as of October 30, 2012. Tr. 232. After her application was denied initially and on reconsideration, the ALJ conducted a hearing and, on May 12, 2016, issued a decision finding plaintiff not disabled. Tr. 16-32. The Appeals Council denied plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. Tr. 1.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date; she had the following severe impairments: fibromyalgia, nonepileptic convulsions, mild lumbar spine degenerative disc disease, conversion disorder v. somatoform disorder, depressive disorder, and anxiety disorder; and that these impairments did not meet or equal the requirements of a listed impairment.[2] Tr. 18-19. The ALJ found that plaintiff had the residual functional capacity to perform a reduced range of light work with various additional physical limitations and a limitation to performing simple, routine tasks. Tr. 21. The ALJ found that plaintiff could not perform her past relevant work, but, as there are other jobs that exist in significant numbers in the national economy that she can perform, she was not disabled. Tr. 29-31.

## DISCUSSION

### A.    Medical evidence

Plaintiff argues that the ALJ failed to properly evaluate numerous medical opinions and other medical evidence. Dkt. 12 at 3. In general, the ALJ must give specific and legitimate reasons for rejecting a treating or examining doctor's opinion that is contradicted by another doctor, and clear and convincing reasons for rejecting a treating or examining doctor's uncontradicted opinion. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996).

### 1.    Dr. Kemp

Fred Kemp, Ph.D., examined plaintiff in July 2015. He diagnosed depression NOS and rule out PTSD and assigned a global assessment of functioning (GAF) score of 45, indicating

---

[1] 20 C.F.R. § 404.1520.

[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

ORDER AFFIRMING THE COMMISSIONER AND DISMISSING THE
CASE - 2

serious symptoms or a serious impairment in social, occupational, or school functioning. Tr. 1103; Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders (DSM-IV), 34 (4th ed. text rev. 1994). He opined that plaintiff had the ability to reason and to understand, although she endorsed some cognitive impairment; her memory appeared to be largely intact; she had significant difficulties with concentration and persistence, both of which were related to her physical difficulties; and her judgment appeared to be adequate. Tr. 1102. He opined that she was unable to work at that time due to her known and unknown physical conditions. *Id.*

Dr. Kemp opined that plaintiff had marked limitations in the following functional areas: the ability to maintain attention and concentration for extended periods; the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and the ability to travel in unfamiliar places or to use public transportation. Tr. 1104-06.

The ALJ gave Dr. Kemp's opinion no weight. Tr. 28. The ALJ found that Dr. Kemp's examination found that plaintiff could remember things, do calculations, stay focused, and perform simple tasks, making it unclear why Dr. Kemp concluded plaintiff had a cognitive impairment, a GAF score of only 45, and the inability to work at that time. *Id.* The ALJ found that Dr. Kemp's conclusions about marked limitations all contrasted with the findings on Dr. Kemp's mental status examination and with the other mental status examinations in the record. Tr. 28. And the ALJ found that mental limitations as significant as Dr. Kemp opined were not consistent with the lack of mental health treatment prior to Dr. Kemp's evaluation. Tr. 28.

1  Plaintiff argues that the ALJ's finding regarding Dr. Kemp's conclusions about marked

2  limitations is erroneous because Dr. Kemp observed that plaintiff broke into tears multiple times

3  throughout his interview and found that she had significant limitations in concentration and

4  persistence, and these findings fully support Dr. Kemp's conclusions. Dkt. 12 at 4. The

5  Commissioner responds that plaintiff has not shown that the ALJ's interpretation of the opinion

6  is unreasonable and that, as plaintiff did not challenge the ALJ's other reasons for rejecting Dr.

7  Kemp's opinion and these reasons were valid, any error here is harmless. Dkt. 16 at 7.

8  An ALJ may give less weight to an opinion where there is a discrepancy between the

9  doctor's assessment of the patient's limitations and the doctor's clinical notes, recorded

10  observations, and other opinions. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Here,

11  Dr. Kemp described normal findings on mental status examination, including in the areas of

12  memory, concentration, insight, and judgment. The ALJ could reasonably conclude that these

13  findings are inconsistent with the marked limitations Dr. Kemp opined elsewhere in his opinion.

14  Similarly, an ALJ may reject a medical opinion that is inconsistent with other evidence in the

15  record. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Other

16  mental status examinations throughout the record document normal findings in memory, mood,

17  insight, and judgment. *E.g.*, Tr. 998, 1011, 1021, 1032, 1035, 1038, 1059, 1139, 1146, 1148-49,

18  1278. The ALJ could reasonably conclude that these discrepancies undermined Dr. Kemp's

19  opinion.

20  In her challenge to this reason for rejecting the opinion, plaintiff does no more than offer

21  her own interpretation of her tearfulness and her level of difficulty with concentration and

22  persistence. But even if plaintiff's proposed interpretation is rational, where, as here, the

23  evidence is susceptible to more than one rational interpretation, the court must uphold the

Commissioner's conclusion. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Moreover, plaintiff does not challenge the ALJ's other reasons for rejecting the opinion, and the court finds no error in these reasons. The ALJ gave valid reasons to reject Dr. Kemp's opinion, and the court may not disturb that assessment.

    2.    *Dr. Nakashima*

In February 2015, treating rheumatologist James Nakashima, M.D., confirmed plaintiff's diagnosis of fibromyalgia, but found that that diagnosis did not explain her neurological symptoms. Tr. 963. Dr. Nakashima noted that treatment with gabapentin had allowed plaintiff to ambulate with a cane, but she reported that her endurance was very poor and that she had increasing weakness, especially in the left side of her body, as the day went on. Tr. 962. The following month, Dr. Nakashima noted continued weakness, which he believed was due to an underlying neurological process. Tr. 976-77. The ALJ discussed Dr. Nakashima's treatment notes in reviewing the medical records. Tr. 24.

Plaintiff asserts that fibromyalgia can cause weakness and argues that the ALJ erred by failing to acknowledge that Dr. Nakashima's findings provide an objective basis for plaintiff's testimony about her limitations. Dkt. 12 at 5. But Dr. Nakashima himself stated that he did not believe plaintiff's fibromyalgia explained the neurological symptoms, including weakness, he observed. The ALJ's failure to interpret this evidence in the manner plaintiff proposes by connecting Dr. Nakashima's observation of weakness to plaintiff's fibromyalgia was not erroneous, particularly in light of Dr. Nakashima's own comments on the matter. The court finds no error in the ALJ's assessment of these findings.

### 3. *Chiropractic and physical therapy evidence*

Plaintiff received chiropractic treatment and physical therapy after her work-related back injury in October 2012, and these providers gave numerous opinions about her functioning. *E.g.*, Tr. 680, 764-65, 1249, 1255-56. The ALJ stated that she considered these opinions but gave them no weight. Tr. 28. The ALJ found that the objective findings on imaging studies did not support the extreme degree of limitation alleged by plaintiff or set forth by these providers, that it seemed that these opinions were based largely on plaintiff's subjective complaints, which the ALJ found to be not consistent with the evidence, and that the opinions of plaintiff's treating orthopedic surgeon and the state agency medical consultant to be better supported by the objective medical evidence and therefore more reliable. *Id.*

Plaintiff argues that the ALJ's finding is not supported by substantial evidence because the ALJ failed to acknowledge that fibromyalgia is an impairment whose severity cannot be measured in imaging studies and, contrary to the ALJ's inference, the chiropractic and physical therapy evidence fully supports plaintiff's testimony about her limitations. Dkt. 12 at 7.

Chiropractors and physical therapists are not acceptable medical sources who can give medical opinions. *See* 20 C.F.R. § 404.1513(a). The ALJ may evaluate opinions of other medical sources using the same factors applied to evaluate medical opinions of acceptable medical sources. SSR 06-03p. But the ALJ may give less weight to opinions of other medical sources than to those of acceptable medical sources. *Id.* The ALJ must give specific, germane reasons for rejecting opinions from other sources that are not acceptable medical sources. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

Plaintiff asserts that these opinions support her testimony about limitations from fibromyalgia. But these providers treated plaintiff for her work-related back injury, and their

opinions related to this impairment. For example, chiropractor Don Lathrop, D.C., opined in January 2014 that plaintiff was "not capable of work as it relates to her industrial injury." Tr. 404. The ALJ's failure to make a connection between opinions about a back injury and limitations from fibromyalgia was not erroneous. Plaintiff merely proposes an alternative interpretation of the evidence, which this court cannot accept over the ALJ's interpretation.

Moreover, the ALJ was entitled to give more weight to the opinion of the treating orthopedic surgeon than to these providers. SSR 06-03p. Andrew Manista, M.D., who concurrently treated plaintiff's back injury, opined in January 2013 that plaintiff's differential diagnosis was back strain or abdominal muscular strain, she was neurologically intact and her spine structures were stable, and therefore surgery was not indicated. Tr. 719. He found that an MRI of her spine showed that her pain was not associated with disc herniation or stenosis. Tr. 723. He recommended physical therapy and found it reasonable for her to continue chiropractic care. Tr. 719, 730. He opined throughout the course of treatment that plaintiff would be able to return to light work after her back injury had healed. *E.g.*, Tr. 720, 727, 729. The ALJ's finding that this opinion was better supported and therefore entitled to greater weight was a germane reason to reject the chiropractic and physical therapy opinions. The ALJ did not err in evaluating the physical therapy and chiropractic opinions.

### 4.    *Dr. Manista*

As noted, the ALJ gave great weight to Dr. Manista's opinion that plaintiff could return to light work after her back injury had healed. Tr. 27. Plaintiff argues that as Dr. Manista did not treat her after April 2013, his opinion is entitled to little weight for the period after that date. Dkt. 12 at 8. Dr. Manista treated plaintiff for the injury she alleges commenced her inability to work and ended his treatment when he found she had reached maximum medical improvement with

respect to that injury and there was no other medical treatment he could provide. Tr. 730. His opinion about that injury is highly probative and the ALJ properly gave it great weight. The fact that the medical record continued on past the end of his treatment does not mean his opinion is no longer relevant or deserves any less weight as to the impairment he treated.

Plaintiff also asserts that Dr. Manista did not opine that plaintiff could return to full-time light work but opined that plaintiff could attempt to start with part-time work and work her way up to full-time work. Dkt. 12 at 8. Dr. Manista expressed this opinion in an April 2013 treatment note, where he agreed with plaintiff's plan to work up to her previous full-time schedule over the course of several weeks and anticipated "release to full restrictions" and maximum medical improvement by June 1, 2013. Tr. 729. As he expected, he found maximum medical improvement in June 2013 and ended treatment at that time. Tr. 730. The April 2013 opinion was an interim opinion that was fully consistent with Dr. Manista's opinion at the conclusion of his treatment. Plaintiff has not identified any error in the ALJ's consideration of Dr. Manista's opinion.

### 5. *Other medical evidence*

Plaintiff describes numerous medical records from various providers. Dkt. 12 at 8-12. She states, at the conclusion of this recitation: "This medical evidence, in its entirety, is consistent with the findings of Dr. Kemp and Dr. Nakashima, and it is also consistent with [plaintiff's] testimony." Dkt. 12 at 12. This statement is conclusory and provides no argument or explanation. The Court may deem arguments that are unsupported by explanation to be waived. *See Avila v. Astrue*, No. C07-1331, 2008 WL 4104300 (E.D. Cal. Sept. 2, 2008) at *2 (unpublished opinion) (citing *Nw. Acceptance Corp. v. Lynnwood Equip., Inc.*, 841 F.2d 918,

923-24 (9th Cir. 1996) (party who presents no explanation to support claim of error waives issue)). The Court declines to address this conclusory assertion of error.

### 6.     *Non-examining doctor*

The ALJ gave great weight to the opinion of state agency medical consultant Robert Bernandez-Fu, M.D., finding that Dr. Bernandez-Fu is familiar with Social Security regulations and rulings and that his opinions were generally consistent with the physical examination findings in the record, Dr. Manista's opinion, and plaintiff's own statements. Tr. 27. Plaintiff argues that as Dr. Bernandez-Fu did not review any evidence beyond February 2014 and therefore did not account for the limitations caused by plaintiff's fibromyalgia, his opinion was entitled to little weight. Dkt. 12 at 12. The fact that an opinion was given early in the relevant period does not render it meaningless or preclude the ALJ from giving it any particular weight. Plaintiff does not challenge the reasons the ALJ gave for giving the opinion great weight, and the court finds no error in those reasons. The ALJ did nor err in evaluating Dr. Bernandez-Fu's opinion.

## B.     **Plaintiff's testimony**

Plaintiff argues that the ALJ failed to properly evaluate her testimony. Dkt. 12 at 12. The ALJ did not find that plaintiff was malingering. Thus, the ALJ was required to provide clear and convincing reasons to reject her testimony. *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). An ALJ does this by making specific findings supported by substantial evidence. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834.

Plaintiff first argues that errors she alleged in the ALJ's evaluation of the medical evidence tainted the ALJ's evaluation of her testimony. Dkt. 12 at 13. As the court found no error in the ALJ's evaluation of the medical evidence, this argument fails.

Plaintiff next challenges the ALJ's finding that plaintiff's allegations are not entirely consistent with the evidence, arguing that the ALJ improperly relied on what she characterizes as the "objective evidence test." Dkt. 12 at 13. Although plaintiff is correct that a lack of support in the objective medical evidence cannot be the sole reason an ALJ discounts subjective complaints, the ALJ can consider it as one relevant factor among others. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). As the ALJ gave other reasons for discounting plaintiff's statements, the ALJ could validly consider the consistency of plaintiff's testimony with the objective medical evidence and did not err by doing so.

The ALJ found that there was a significant gap in treatment from April 2013 to February 2014. Tr. 26. An ALJ may consider evidence of minimal or no treatment when evaluating a claimant's statements. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). But plaintiff asserts, and the Commissioner concedes, that this finding is based on a factual error, as plaintiff received physical therapy and chiropractic treatment as well as treatment by medical doctors and a nurse practitioner during this time. Dkt. 12 at 13; Dkt. 16 at 12. The ALJ's factual error makes this reason for discounting plaintiff's statements invalid.

The ALJ found that plaintiff made inconsistent statements about her use of medication, testifying at one point that she prefers to do things the natural way and uses no prescription medications, and at another point that she uses so many medications that she did not want to add another. Tr. 26. Plaintiff argues that the ALJ misrepresented plaintiff's testimony and created a false narrative. Dkt. 12 at 13-14.

During the hearing, plaintiff began sniffing essential oils; when the ALJ asked her what kind of oils they were, they had the following exchange:

> A:    One is to try to calm down my anxiety. I'm trying to medicate without medicine.
> Q:    Okay.
> A:    I prefer the natural way so I'm trying very hard to—
> Q:    Okay. So, you're not taking any anti-anxiety medication, you're sniffing essential oils?
> A:    I take essential oils and an herbal tonic for irritability and sadness, depression.
> Q:    Do you take any prescribed—
> A:    No prescription.
> Q:    No prescription.
> A:    No prescription for it, no.

Tr. 54. The ALJ later asked if she took any prescribed medication for her nausea, and plaintiff testified that she sometimes took Reglan but she did not take it on a regular basis, even though she had no side effects from it, because "I already take so much medication and swallowing, I don't want to add any more build up because my system has so many issues." Tr. 56-57.

The ALJ's interpretation of plaintiff's use of the phrase "no prescription" to mean that she took no prescription medications at all was not a rational inference from her testimony; the context of the exchange shows that the discussion was about anxiety medication specifically. Thus, her later testimony about taking "so much medication" was not inconsistent with this testimony. This was another invalid reason to reject plaintiff's testimony.

The ALJ found that despite plaintiff's claims of depression, anxiety, PTSD, and significant concentration difficulty throughout the period at issue, she did not begin mental health treatment until mid-2015, she saw her provider only three times, and her provider assessed her with a GAF score that was indicative of someone who could likely maintain full time employment on a regular and continuing basis. Tr. 27. The ALJ also noted that Dr. Kemp's evaluation did not find significant limitations on mental status examination. *Id.* The ALJ found

this evidence to be consistent with plaintiff's testimony that she uses only essential oils and an herbal tonic for her anxiety, irritability, and depression, and found that at most, the medical evidence reflected moderate limitations in her ability to maintain good concentration. *Id.*

Plaintiff asserts that the ALJ improperly chastised her for the exercise of poor judgment in seeking treatment for her mental health impairment. Dkt. 12 at 14. It is true that a person suffering from a mental illness may not realize that she needs medication, or even that her "condition reflects a potentially serious mental illness," and for this reason, it is "a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996). But here, the ALJ connects plaintiff's minimal treatment with the mild findings by her mental health provider and Dr. Kemp and her own testimony that she uses only essential oils and herbal tonics to treat her mental impairments. The ALJ is not chastising her for failure to seek treatment, but finding that when she sought it, her level of treatment and the minimal findings were inconsistent with her statements about the severity of her mental limitations. This was a valid reason to discount her testimony.

The ALJ concluded the evaluation of plaintiff's testimony as follows:

> The lack of a significant treatment history, the lack of significant objective findings, and the large number of inconsistencies in plaintiff's testimony and throughout the record all contribute to significantly weakening the credibility of the claimant's complaints that she has been disabled and unable to perform even light or sedentary work since the alleged onset date.

Tr. 27. Plaintiff argues that this reason is neither specific nor convincing and that it is another improper application of the "objective evidence test." Dkt. 12 at 14. This paragraph is a summary of the ALJ's reasons for rejecting plaintiff's testimony, not a separate reason for rejecting it. The

ALJ was not required to restate all the details for each reason when summarizing her assessment of plaintiff's testimony, and did not err by including such a summary.

Plaintiff further argues that this finding shows that the ALJ failed to properly evaluate her fibromyalgia-related symptoms and is contrary to Social Security Ruling 12-2p and *Revels v. Berryhill*, 874 F.3d 648 (9th Cir. 2017). Dkt. 12 at 14. She asserts that her examination results were perfectly consistent with debilitating fibromyalgia and that the ALJ could not properly reject her testimony about fibromyalgia-related symptoms based on imaging studies that are unrelated to fibromyalgia. *Id.*

SSR 12-2p provides guidance on evaluating a disability claim involving fibromyalgia. It provides that where, as here, fibromyalgia is established as a medically determinable impairment, the ALJ follows the established two-step process for evaluating symptom testimony.[3] In evaluating symptom testimony, the ALJ must consider whether the claimant's statements about her symptoms are consistent with the medical signs and laboratory findings of record. SSR 16-3p. If the objective medical evidence does not on its own compel a finding of disability, the ALJ must consider other evidence and the factors set forth in 20 C.F.R § 404.1529(c)(3). *Id.*

SSR 12-2p thus explicitly sets forth a framework for the consideration of objective evidence in fibromyalgia cases. Plaintiff's contention that it is improper to consider objective evidence when evaluating fibromyalgia is contrary to Social Security policy. The ALJ did not err by considering whether the objective evidence supported plaintiff's testimony as one component

---

[3] SSR 12-2p refers to the symptom evaluation process in SSR 96-7p. However, SSR 96-7p has been superseded; SSR 16-3p governs the symptom evaluation process in cases decided after March 28, 2016.

of the analysis. The court finds no error in the ALJ's consideration of the objective evidence as it relates to fibromyalgia.

The ALJ gave some valid and some invalid reasons for discounting plaintiff's subjective statements. An ALJ's use of an invalid reason to support her adverse credibility finding may be harmless if, despite the error, there remains substantial evidence to support the ALJ's conclusion. *Batson*, 359 F.3d at 1195-97. Here, the ALJ erroneously found that plaintiff had a gap in her treatment and unreasonably interpreted her testimony that she had "no prescription." But the remaining reasons the ALJ gave were valid and provide substantial evidence to support the ALJ's finding. The court therefore finds the ALJ's errors in evaluating plaintiff's testimony harmless.

## C.    Lay witness evidence

Plaintiff argues that the ALJ failed to properly evaluate the lay witness evidence from her girlfriend, sister, and friend. Dkt. 12 at 17. Lay testimony as to a claimant's symptoms is competent evidence that the ALJ must take into account, unless the ALJ expressly determines to disregard such testimony and gives specific reasons germane to each witness for doing so. *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). An ALJ may discount lay testimony that is inconsistent with medical evidence. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). And where lay testimony is similar to the plaintiff's subjective statements, a valid reason for rejecting the plaintiff's testimony is also a valid reason for rejecting lay witness statements. *Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012).

Plaintiff's girlfriend submitted statements in September 2013 and May and October 2015 in which she reported that plaintiff experienced nausea, dizziness, pain, extreme fatigue and weakness, concentration and memory difficulties, and other severe symptoms. Tr. 271-78, 351-

53, 644-51. In May 2015, plaintiff's sister reported that during an April 2015 visit, plaintiff was unable to complete a simple sewing project without having to take breaks, she relied on a cane to walk, and at one point her sister had to help plaintiff get to the couch because she could no longer stand on her own. Tr. 359. Also in May 2015, plaintiff's friend reported that plaintiff used to be physically fit and able to care for herself, but now she has to lay on the couch because of muscle fatigue and pain, she uses a cane to get around, and must take frequent breaks if she does chores around the house. Tr. 360.

The ALJ found that the third party statements described severity that was inconsistent with the objective medical evidence, including the physical examination findings and mental status examination findings the ALJ discussed when evaluation plaintiff's testimony, and that they were inconsistent with the medical opinions. Tr. 29. The ALJ therefore found that the lay witness statements did not show plaintiff was more limited than the ALJ's RFC assessment found. *Id.*

The lay witness statements described severe limitations similar to those asserted by plaintiff in her testimony. As discussed above, the ALJ validly discounted plaintiff's testimony in part because it was inconsistent with the medical findings and opinions. These inconsistencies were also a valid reason to discount the lay witness statements. The ALJ did not err in evaluating the lay witness evidence.

### D.    RFC and Step Five Finding

Plaintiff argues that the court should find the ALJ's RFC assessment legally erroneous and not supported by substantial error because of the errors she identified above, and that the ALJ's finding of non-disability at step five is likewise invalid because it is based on vocational expert testimony made in response to a hypothetical based on this RFC assessment. Dkt. 12 at

18-19. This argument is based on the assignments of error this Court has rejected. Because the ALJ's assessment of plaintiff RFC was free of harmful legal error and supported by substantial evidence, this ALJ's reliance on the expert's testimony was proper. *Bayliss*, 427 F.3d at 1217-18.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

DATED this 4th day of December, 2018.

_____
BRIAN A. TSUCHIDA
Chief United States Magistrate Judge